Robert S. Green (State Bar No. 136183)
**GREEN & JIGARJIAN LLP**
235 Pine Street, 15th Floor
San Francisco, CA 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Evan J. Smith
Marc L. Ackerman
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200
Facsimile: (610) 667-9029

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

LAURENT TORRIANI, Derivatively on Behalf
of OMNIVISION TECHNOLOGIES, INC.,

          Plaintiff,

vs.

SHAW HONG, RAYMOND WU, JOHN T.
ROSSI, EDWARD C.V. WINN and JOSEPH
JENG

          Defendants,

    - and -

OMNIVISION TECHNOLOGIES, INC. a
Delaware corporation,

          Nominal Defendant.

Case No. **04 2443**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
BREACH OF FIDUCIARY DUTY AND
UNJUST ENRICHMENT AND
VIOLATIONS OF CALIF. CORPS.
CODE SECTIONS 25402 & 25502.2**

**DEMAND FOR JURY TRIAL**

      Plaintiff, Laurent Torriani, alleges, upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by and through his attorneys, which includes a review of the public filings of OmniVision Technologies, Inc. ("OmniVision," the "Corporation" or the "Company") including, without limitation, Forms 10-K and 10-Q, annual reports, proxy statements, press releases, published reports and news articles, as follows:

**INTRODUCTION AND OVERVIEW**

1.      This is a verified stockholder's derivative action brought on behalf of OmniVision by one of its shareholders against its entire Board of Directors and/or several of the Corporation's top officers for: (i) breach of fiduciary duty in misappropriating and misusing internal proprietary non-public material corporate information to personally profit by illegal insider trading in the Company's stock; (ii) failing to properly oversee or implement federal or state laws prohibiting such illegal insider trading as well as OmniVision's own policies and rules restricting the misuse of internal corporate information for such purposes; (iii) causing OmniVision to be sued for, and exposed to, liability for violations of the anti-fraud provisions of the federal securities laws; and (iv) for the illegal insider trading in the Corporation's stock in violation of California Corporations Code §§25402 and 25502.5.

2.      Defendants are liable as participants in a fraudulent course of business by disseminating materially false and misleading statements and/or concealing material adverse facts regarding the Company, including: (1) that defendants knew or recklessly disregarded the fact that the Company was losing customers to larger rivals such as Micron Technologies, Inc., Texas Instruments Inc., and National Semiconductor Corporation; (2) that defendants knew or recklessly disregarded that the Company's previously surging growth was hitting a plateau, due to the decline in the customer base; (3) that the defendants, in order to mask the decline in growth, manipulated the Company's financial results through improper revenue recognition, which was in violation of GAAP; and (4) that as a result, the Company's financial results were materially inflated and inaccurate at all relevant times such that the false and misleading information disseminated by Defendants caused the Company stock to trade at artificially inflated prices.

3.      In disseminating the false and misleading information set forth in the preceding paragraph, Defendants: (i) deceived the investing public regarding OmniVision's business, operations, management and the intrinsic value of OmniVision common stock; and (ii) allowed certain insiders to sell over 670,000 shares of company stock and garner illegal proceeds of more than $25 million.

4.     As a result of defendants' illegal conduct, OmniVision has been significantly and materially damaged. First, in violation of California common law and statute, certain corporate insiders have misappropriated and misused material non-public proprietary information regarding defendants' inability to manage and control the financial and manufacturing capabilities of the Company, for their own personal profit, selling more than 670,000 shares of their privately held OmniVision stock and garnering for themselves illicit proceeds of over $25 million. In addition, the false statements made by defendants, which artificially inflated the price of the Company's common stock and thus permitted the corporate insiders to profit from their insider trading activities, resulted in the Company being named a defendant in several securities fraud class action lawsuits. These class action lawsuits in federal district court in California, seek significant damages and will cost the Company millions of dollars to defend and likely millions of dollars more to settle or satisfy.

5.     The illegal insider trading activities of certain of the defendants will make the securities class action suits much more difficult, if not impossible, to defend and will provide a basis for OmniVision's directors' and officers' liability insurance carrier to disclaim coverage under the active and deliberate dishonesty exclusion or the insider trading exclusion and/or negotiate a defense expense sharing allocation with OmniVision that will be unfavorable to the Company. Moreover, these revelations of certain defendants' illegal insider trading and violations of the securities laws have badly damaged OmniVision's corporate image and good will. For at least the foreseeable future, OmniVision will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled securities analysts and the investing public, such that OmniVision's ability to raise equity capital on favorable terms in the future will be impaired.

6.     Management of OmniVision is antagonistic to this lawsuit and making demand on the Board of Directors would be futile. The Board at the time of the filing of this action has only five members. Three of the five board members are corporate insiders who hold executive positions of authority in the Company, and who engaged in the illegal insider selling complained of herein. The directors of OmniVision will not bring any action directly against any of the insider

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  selling defendants on behalf of the Company.  Moreover, in order to properly prosecute this

2  lawsuit, it would be necessary for the Directors to sue themselves – something they are unwilling

3  to do.  Such a suit would require the Directors to expose themselves to multi-million dollar liability

4  to the Company, which, due to the particular language of currently utilized directors' and officers'

5  liability insurance policies (*i.e.*, the insured vs. insured exclusion), would not be an insured claim,

6  while the claims asserted in this derivative action may be insured.

7         7.       Since the insider trading activities of the insider selling defendants are illegal under

8  California corporate law and are not covered by OmniVision's directors' and officers' liability

9  insurance, in order to adequately protect OmniVision's interests in this situation, it is necessary for

10  the Company to seek and obtain preliminary injunctive relief against the individual defendants who

11  sold OmniVisionstock based on misappropriated proprietary corporate information, imposing a

12  constructive trust on and/or freezing those insider selling proceeds so that they will be available to

13  OmniVision if this suit is successful on the merits.  Absent such a freeze, these defendants who sold

14  OmniVision stock based on inside information will dissipate and/or secrete their insider sales

15  proceeds, making it much more difficult to recover those proceeds.  Under these circumstances,

16  making a pre-suit demand also would unreasonably delay the pursuit of important legal remedies.

17                                **JURISDICTION AND VENUE**

18         8.       This Court has jurisdiction over the subject matter of this action pursuant to

19  28 U.S.C. § 1332.

20         9.       Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  OmniVision has

21  its headquarters in this district and it conducts substantial business in this District and many of the

22  acts and practices complained of herein occurred in substantial part in this District.  Additionally,

23  the defendants named in this shareholders' derivative action have received substantial compensation

24  from their business activities within this judicial district.

25                                      **THE PARTIES**

26         10.      Plaintiff, Laurent Torriani is a resident of the State of New Jersey who is an owner

27  of shares of OmniVision stock.  Plaintiff purchased 200 shares of OmniVision stock on April 13,

28  2004 and has owned OmniVision stock continuously through to the present.  Plaintiff brings this

action derivatively in the right of and for the benefit of OmniVision. Plaintiff will fairly and adequately represent the interests of OmniVision and the shareholders of OmniVision in enforcing the rights of the Company.

11. Nominal Defendant OmniVision is a Delaware corporation with its headquarters located at 1341 Orleans Drive, Sunnyvale, California 94089. OmniVision designs, develops and markets high-performance, cost-efficient semiconductor image sensor devices. The Company's main product, an image sensing device called the CameraChip, is used to capture an image in a wide variety of consumer and commercial mass market applications, including digital still cameras, cellular telephones, security and surveillance cameras and video game consoles. The Company's CameraChips are manufactured using the CMOS process, the most widely utilized method of producing modern integrated circuits.

12. Defendant Shaw Hong ("Hong") is, and at all times relevant to the allegations raised herein, was President, Chief Executive Officer ("CEO") and a director of OmniVision. Defendant Hong co-founded the Company with defendant Raymond Wu. According to the Company's FY:03 Proxy Statement, as of July 31, 2003, defendant Hong owned or controlled over 809,000 shares of OmniVision stock, approximately 3.6% of all outstanding common shares of the Company. In exchange for his purported loyalty and fidelity, defendant Hong, as one of the three individuals that served as an officer and employee-director of the Company (along with defendants Raymond Wu and John T. Rossi), received the following significant compensation package from OmniVision during FY:03: salary – $273,333; bonus – $40,000; other compensation - $18, 034, as well as the option to purchase 100,000 shares of OmniVision stock. During the relevant period, defendant Hong also sold 199,934 shares of his personally held company stock for proceeds of $6.7 million.

13. Defendant Raymond Wu ("Wu"), is, and at relevant times relevant to the allegations raised herein, was a director of OmniVision and Executive Vice President of the Company. He co-founded the Company with defendant Hong. According to the Company's FY:03 Proxy Statement, as of July 31, 2003, defendant Wu owned or controlled over 402,000 shares of OmniVision stock, approximately 2.0% of all outstanding common stock. In exchange for his purported loyalty and

fidelity, defendant Wu, as one of the three individuals that served as an officer and employee-director of the Company (along with defendants Hong and John T. Rossi), received the following significant compensation package from OmniVision during FY:03: salary – $210,000; bonus – $32,000; other compensation - $15,549, as well as the option to purchase 80,000 shares of OmniVision stock. During the relevant period, defendant Wu sold 405,927 shares of his personally held company stock for proceeds of $16.9 million.

14.     Defendant John T. Rossi  ("Rossi") is, and at all times relevant to the allegations raised herein, was a director of OmniVision, Chief Financial Officer ("CFO") of the Company and Vice President of Finance of the Company.  Defendant Rossi replaced H. Gene McCown as CFO on or about September 17, 2003.  According to the Company's FY:03 Proxy Statement, as of July 31, 2003, defendant Rossi owned or controlled over 212,000 shares of OmniVision stock, approximately 1.2% of the outstanding common shares of the Company.   In exchange for his purported loyalty and fidelity, defendant Rossi, as one of the three individuals that served as an officer and employee-director of the Company (along with defendants Hong and Wu) received a compensation package from OmniVision during FY:03.  While his specific compensation package is unavailable, on information and belief, defendant Rossi received a compensation package similar to the package received in 2003 by H. Gene McCown for the same position.  Mr. McCown's compensation package was: salary – $158,333; bonus – $30,000; other compensation - $12,070, as well as the option to purchase 50,000 shares of OmniVision stock. During the relevant period, defendant Rossi also sold 65,000 shares of his personally held company stock for proceeds of $2.0 million.

15.     Defendant Edward C.V. Winn ("Winn") is, and at all times relevant to the allegations raised herein was, a director of the Company and has served in this position since 2000. According to the Company's FY:03 Proxy Statement, as of July 31, 2003, defendant Winn did not own or control any shares of OmniVision stock.  As a non-employee director of the Company, defendant Winn received an option to purchase 20,000 shares of common stock of the Company on the date he became a director and, thereafter, is scheduled to receive an option to purchase

10,000 shares at the first meeting of directors following each Annual Meeting. Defendant Winn also receives $1,500.00 per board meeting attended and $500.00 per committee meeting attended. During the relevant period, defendant Winn was a member of the Audit Committee, the Compensation Committee and the Corporate Governance and Nominating Committee.

16.     Defendant Joseph Jeng ("Jeng") is, and at all times relevant to the allegations raised herein was, a director, and has been since 2003. According to the Company's FY:03 Proxy Statement, as of July 31, 2003, defendant Jeng did not own or control any shares of OmniVision stock. As a non-employee director of the Company, defendant Jeng received an option to purchase 20,000 shares of common stock of the Company on the date he became a director and, thereafter, is scheduled to receive an option to purchase 10,000 shares at the first meeting of directors following each Annual Meeting. Defendant Jeng also receives $1,500.00 per board meeting attended and $500.00 per committee meeting attended. During the relevant period, defendant Jeng was a member of the Audit Committee, the Compensation Committee and the Corporate Governance and Nominating Committee.

17.     The defendants named in ¶¶ 12-17 are sometimes collectively referred to herein as the "Director Defendants."

18.     The Director Defendants owed the Company and its public shareholders the duty to exercise a high degree of due care, loyalty, and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of OmniVision, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which the defendants were aware or should have been aware posed a risk of serious injury to the Company.

19.     Notwithstanding their positions of trust and fidelity, and in violation of California law, while in the possession of materially adverse non-public information regarding OmniVision, defendants Hong, Wu and Rossi sold significant amounts of Company stock in the amounts indicated below:

| NAME | SHARES SOLD | PROCEEDS |
|------|-------------|----------|
| **Hong** | 199,934 | $6.7 million |
| **Wu** | 405,927 | $16.9 million |
| **Rossi** | 65,000 | $2.0 million |
| **TOTAL** | 670,861 | $25.6 million |

20.     In contrast to the actions taken by defendants as alleged herein, including the sale of millions of dollars worth of their OmniVision shares while in possession of material adverse information, to properly discharge the aforesaid duties, defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial affairs of the Company pursuant to their fiduciary obligations to use the same care and diligence as would an ordinary prudent person in a like position.  The Director Defendants were required, among other things:

•       To, in good faith, manage, conduct, supervise and direct the business and affairs of OmniVision carefully and prudently and in accordance with the laws of whichever state controls its "internal affairs," the laws of the United States and the rules and regulations and the charter and by-laws of OmniVision;

•       To neither violate nor knowingly permit any officer, director or employee of OmniVision to violate applicable federal and state laws, rules and regulations or any rule or regulation of OmniVision;

•       To exercise reasonable control and supervision over the public statements to the securities markets and trading in OmniVision stock by the officers and employees of OmniVision;

•       To remain informed as to the status of OmniVision's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with the federal securities laws;

•       To supervise the preparation, filing and/or dissemination of any SEC filings, press releases, audits, reports or other information required by law, to examine and evaluate any reports or examinations, audits, or other financial information concerning the financial condition of OmniVision and to cause OmniVision to obey and comply with and not violate the federal or state securities laws;

- To ensure that OmniVision was operated in a diligent, honest and prudent manner in compliance with all applicable federal and state laws, rules and regulations;

- To maintain and implement an adequate system of controls and information systems, such that no officer, director or employee of the Corporation would make false statements about OmniVision to the securities markets or would be able to misappropriate internal confidential information for his or her own benefit and profit, by insider stock trading or otherwise; and

- To ensure that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

21.    The Director Defendants, particularly the members of the Audit Committee, were responsible for maintaining and establishing adequate internal accounting controls for OmniVision and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Director Defendants were required to:

1.    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

2.    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

a.    transactions are executed in accordance with management's general of specific authorization;

b.    transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles.

22.    Moreover, according to Appendix D to Statement on Auditing Standards No. 55, ("SAS 55"), management should consider, among other things, such objectives as: (i) making certain that "[t]ransactions are recorded as necessary ... to permit preparation of financial statements in conformity with generally accepted accounting principles ... [and] to maintain accountability for assets;" and (ii) make certain that "[t]he recorded accountability for assets is compared with the

existing assets at reasonable intervals and appropriate action is taken with respect to any differences."

23.    According to SAS 55.13:

> Establishing and maintaining an internal control structure is an important management responsibility.  To provide reasonable assurance that an entity's objectives will be achieved, the internal control structure should be under ongoing supervision by management to determine that it is operating as intended and that it is modified as appropriate for changes in conditions."

24.    OmniVision's Audit Committee Charter applicable during the relevant period of time provided that the purpose of the Audit Committee was to, *inter alia*:

    i.    Oversee the accounting and financial reporting processes of the Company and audits of the financial statements of the Company;

    ii.    Assist the board in oversight and monitoring of (i) the integrity of the Company's financial statements, (ii) the Company's accounting policies and procedures, (iii) the Company's compliance with legal and regulatory requirements, . . . (v) the Company's disclosure controls and procedures and (vi) the Company's internal controls;

    iii.    Provide to the Board such additional information and materials as it may deem necessary to make the Board aware of significant financial matters that require the attention of the Board.

25.    Moreover, the Audit Committee Charter required that members of the Audit Committee be independent.  According to the very rules set forth by defendants, a member of the Audit Committee must be independent as that term is defined by Nasdaq Rule 4200 and SEC rules. That is, the Audit Committee member must not have any relationship that may interfere with the exercise of their independence from management and the Company.  Clearly, as set forth herein, at a bare minimum, defendant Rossi, as the CFO and Vice President of Finance for the Company was inextricably intertwined with defendants Hong and Wu such that his position on the Audit Committee compromised his ability to be independent as required by Nasdaq and SEC rules.

26.    As alleged in detail below, the Director Defendants, particularly the members of the Audit Committee, failed to implement and maintain an adequate internal accounting control system for OmniVision, and thereby violated: (i) their fiduciary duties of loyalty and good faith; (ii) GAAP; and (iii) the Audit Committee Charter.

27.    The Director Defendants further breached their duties of loyalty and good faith by: (i) causing or allowing the Company to conduct its business in an unsafe, imprudent, and unlawful manner; and (ii) causing the Company to suffer damages, as alleged herein.

28.    Defendants, as corporate officers and/or directors, owed OmniVision and its shareholders the duty of due care in the performance of their responsibilities with respect to OmniVision's operations. Each defendant in this action, individually or jointly, as hereinbefore alleged, failed to exercise reasonable diligence and due care, was grossly negligent or reckless, and committed one or more of the following actions or omissions constituting breaches of fiduciary duty:

•    Defendants Hong, Wu and Rossi, with the acquiescence, authority and/or permission of the Board, misused proprietary non-public corporate information to profit by over $30 million by insider selling the Company's stock in violation of Company policies and rules against such misuse of information or sales and in violation of federal and state laws as well;

•    Defendants authorized, caused or permitted OmniVision to conduct its business in an unsafe, imprudent and dangerous manner by pursuing unsound practices, including concealing the true nature of their reckless, unsafe and unsound accounting practices and the serious adverse impact of these practices on OmniVision's financial condition and prospects;

•    Defendants authorized, caused or permitted OmniVision to operate and report information in a manner which was contrary to federal and state regulations, thus exposing it to liability for violation of the federal securities laws for which the Company has been sued in a class action in federal court in California; and

•    Defendants' conduct as alleged herein has also damaged OmniVision by exposing it to the cost of the defense of and possible cost of liability for violation of the federal securities laws as a result of the securities class action lawsuits now pending against it in federal court, damage to the goodwill and reputation of OmniVision due to the negative adverse publicity that their actions have generated, and they have impaired OmniVision's ability to raise capital at a reasonable and/or low cost

as the Corporation's credit rating has been adversely affected, and its cost of capital has therefore increased, to the harm of the Corporation.

29.    By reason of their corporate positions and their ability to control the business and corporate affairs of OmniVision at all relevant times, defendants owed OmniVision and its stockholders fiduciary obligations of candor, fidelity, trust, and loyalty, and are and were required to use their ability to control OmniVision in a fair, just and equitable manner, as well as to act in furtherance of the best interests of OmniVision and its stockholders and not in furtherance of their own personal interests.  In addition, each director owed OmniVision, while he occupied such directorship, the fiduciary duty to exercise due care and diligence in the management and administration of the affairs of OmniVision and in the use and preservation of its property and assets.  In violation of their fiduciary duties, defendants permitted and/or caused OmniVision to conduct its business in an unsafe, imprudent and dangerous manner by violating the federal securities laws and permitting certain insiders to misappropriate and misuse confidential non-public corporate information for their personal profit.

30.    Defendants participated in the wrongdoing complained of herein in order to improperly benefit themselves by remaining as officers and/or directors of a large corporation and to continue and prolong the illusion of the Company's success, to inflate the price of its common stock, and to conceal the adverse facts concerning defendants' wrongful conduct, and OmniVision's management, financial position and future prospects so that they could: (a) protect and perpetuate their directorial and/or executive positions and increase the substantial compensation, perks and prestige they obtained thereby; and (b) inflate the price of the Company's common stock in order to enhance the value of their securities holdings and options to purchase OmniVision stock and to allow certain insiders to liquidate approximately $30 million of OmniVision stock, while in possession of material adverse non-public information.  Such participation involved, among other things, planning and creating (or causing to be planned and created), proposing (or causing the proposal of) and authorizing, approving and acquiescing in the conduct complained of herein.

31.     As members of the Board of Directors of OmniVision, the directors named herein as defendants were themselves directly responsible for authorizing or permitting the authorization of, or failing to monitor, the practices which resulted in the misappropriation of confidential corporate information and violation of the federal securities laws as alleged herein.  Each of them had knowledge of and actively participated in and approved of the wrongdoings alleged or abdicated his or her responsibilities with respect to these wrongdoings.  The alleged acts of wrongdoing subjected OmniVision to unreasonable risks of loss.

32.     By reason of their membership on the OmniVision Board of Directors and positions as executive officers of the Company, the defendants were each controlling persons of OmniVision and had the power and influence to cause, and did cause, the Company to engage in and/or permit the conduct complained of herein.

## Substantive Allegations

33.     OmniVision purports to design, develop and market high-performance, cost-efficient semiconductor image sensor devices.  The Company's main product, an image sensing device called the CameraChip, is used to capture an image in a wide variety of consumer and commercial mass market applications, including digital still cameras, cellular telephones, security and surveillance cameras and video game consoles.   The Company's stock is quoted on the Nasdaq National Market under the symbol OVTI.

34.     On February 19, 2003, the defendants caused the Company to issue a press release reporting third quarter fiscal 2003 results, which stated, *inter alia*,

> For the three months ended January 31, 2003, it earned a record $4.6 million, or $0.18 per diluted share, on record revenues of $30.5 million, compared to net income of $330,000, or $0.01 per diluted share, on revenues of $10.0 million in the third quarter of fiscal 2002, which ended January 31, 2002.  OmniVision's current fiscal year ends April 30, 2003.

> For the three months ended January 31, 2003, gross profit was $11.5 million, or 37.8% of revenues, and included approximately $347,000 from the sale of previously written-off inventory.  This compares to a gross profit of $8.7 million, or 39.9% of revenues, in the immediately preceding quarter ended October 31, 2002, which included approximately $957,000 from the sale of previously written-off inventory.  Gross profit in the three months ended January 31, 2002 was $4.2

million, or 42.5% of revenues, and included approximately $1.3 million from the sale of previously written-off inventory, which was partially offset by an inventory write-down of approximately $600,000.

Absent sale of previously written-off inventory, gross margins would have been 37.1% of revenues in the three months ended January 31, 2003, compared to 37.2% of revenues in the three months ended October 31, 2002, and 35.1% of revenues in the three months ended January 31, 2002. Excluding benefits from the sale of previously written-off product, net income for the three months ended January 31, 2003, would have been approximately $4.3 million, or $0.17 per diluted share, compared to net income of approximately $2.2 million, or $0.09 per diluted share, for the three months ended October 31, 2002; for the three months ended January 31, 2002, the company would have reported a net loss of approximately $413,000, or $0.02 per share.

Shaw Hong, OmniVision's president and CEO, noted that third-quarter revenues were three times those of the comparable period in fiscal 2002, and sequentially 40% higher than second-quarter fiscal 2003 revenues of $21.7 million. Hong attributed the higher-than-expected revenues and earnings to exceptionally strong demand from manufacturers of digital still cameras and cameras for cell phones. "Many of our customers in Asia accelerated delivery schedules in anticipation of the Chinese New Year in February," said Hong. "Consequently, our current expectations are that we will see only modest sequential growth in the fourth quarter."

For the quarter ending April 30, 2003, the company currently expects to report earnings in a range of $0.18 to $0.19 per diluted share on revenues of $31 million to $33 million; these expectations do not presume the sale of any previously written-off inventory.

35.     On June 11, 2003, defendants caused OmniVision to report that in the

fourth quarter of its fiscal year ended April 30, 2003, it earned $6.1 million, or $0.24 per diluted

share, on revenues of $39.9 million, compared to net income of $1.6 million, or $0.07 per diluted

share, on revenues of $13.1 million in the fourth quarter of fiscal 2002. For its fiscal year 2003,

defendants caused OmniVision to report net income of $15.3 million, or $0.61 per diluted share,

on revenues of $109.0 million, compared to a net loss of $1.3 million, or $0.06 per basic share, on

revenues of $46.5 million in fiscal 2002. Fiscal 2002 results reflected a second-quarter charge of

$3.5 million related to a litigation settlement. For the quarter ending July 31, 2003, the Company

expected to report earnings in a range of $0.18 to $0.19 per diluted share, on revenues of $41 to $43

million.

36.     On June 26, 2003, defendants caused OmniVision to file its annual report with

the SEC on Form 10-K. The Company's Form 10-K, signed by defendant Hong and then CFO H.

Gene McCown ("McCown"), reaffirmed OmniVision's previously announced financial results.

Furthermore, defendants caused the Company, in its Form 10-K to represent through its auditors

PricewaterhouseCoopers LLP ("PwC"), the following:

> In our opinion, the accompanying consolidated balance sheets and the
> related consolidated statements of operations, of stockholders' equity
> and of cash flows present fairly, in all material respects, the financial
> position of OmniVision Technologies, Inc. and its subsidiaries at
> April 30, 2002 and 2003, and the results of their operations and their
> cash flows for each of the three years in the period ended April 30,
> 2003, in conformity with accounting principles generally accepted in
> the United States of America.

37.     In July 2003, defendants caused the Company to file a Form S-3 and

Prospectus with the SEC pursuant to the offering of 6.44 million shares of its stock at $19.38 per

share (split adjusted). Approximately 40,000 shares were sold by defendants Hong and Wu.

OmniVision's shares sold included approximately 186,000 shares sold as part of the over allotment.

The Company received net proceeds of approximately $113.2 million.

38.     The offering was accomplished pursuant to a Registration

Statement/Prospectus that contained OmniVision's previously reported financial results for FY

2003. The documents also incorporated the Company's Form 10-K for 2003.

39.     On August 20, 2003, defendants caused OmniVision to report that in the three

months ended July 31, 2003, the first quarter of its fiscal year ending April 30, 2004, it earned $6.2

million, or $0.23 per diluted share, on revenues of $46.5 million, compared to net income of $1.6

million, or $0.07 per diluted share, on revenues of $16.8 million in the first quarter of fiscal 2003.

For the three months ended July 31, 2003, gross profit was $17.4 million, or 37.3% of revenues,

and included approximately $343,000 from the sale of previously written-off inventory. Without

the sale of previously written-off inventory, gross margin would have been 36.9%, and net income

would have been approximately $6.0 million, or $0.22 per diluted share. In the comparable period

a previous year, gross profit was $6.5 million, or 38.8% of revenues, and included

approximately$795,000 from the sale of previously written-off inventory; without the sale of

previously written-off inventory, first-quarter fiscal 2003 gross margin would have been 35.8%, and net income would have been approximately $947,000, or $0.04 per diluted share. For the quarter ending October 31, 2003, the Company expected to report earnings in a range of $0.22 to $0.23 per diluted share, on revenues of $48 to $50 million.

40.     On September 12, 2003, defendants caused OmniVision to file its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q report, signed by defendant Hong and McCowan, reaffirmed OmniVision's previously announced results. Additionally and with respect to the presentation of its financial results, OmniVision represented:

> The accompanying unaudited condensed consolidated financial statements as of July 31, 2003 and April 30, 2003 and for the three months ended July 31, 2003 and 2002 have been prepared by OmniVision Technologies, Inc. and subsidiaries (the "Company" or "OmniVision") in accordance with the rules and regulations of the Securities and Exchange Commission

> ***

> In the opinion of management, the accompanying unaudited financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the financial position of the Company and its results of operations and cash flows.

41.     On October 29, 2003, defendants caused OmniVision to announce that it was updating its guidance for revenue and earnings per share for the second quarter of fiscal 2004, ending October 31, 2003. Benefitting from strong demand from the digital-still-camera, video-game, and cell-phone markets, defendants caused OmniVision to project that revenue would meet or exceed $65 million and that fully diluted earnings per share would meet or exceed $0.30.

42.     On November 19, 2003, defendants caused OmniVision to report that in the three months ended October 31, 2003, the second quarter of its fiscal year ending April 30, 2004, it earned net income of $11.6 million, or $0.39 per diluted share, on revenues of $68.5 million, compared to net income of $3.0 million, or $0.12 per diluted share, on revenues of $21.7 million in the second quarter of fiscal 2003. Revenues grew by 215% year-to-year and by 47%

quarter-to-quarter. For the quarter ending January 31, 2004, the Company expected to report earnings of $0.40 to $0.42 per diluted share of on revenues of $74 million to $78 million. Commenting on these results, defendant Hong stated:

> "We achieved our greatest quarter-to-quarter revenue growth to date, thanks to wide diversity in customers and to strong contributions from the cell-phone, digital camera, and video-game markets."

43. After this release, OmniVision's stock rose to over $30.00 a share.

44. On December 12, 2003, defendants caused OmniVision to file its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q, signed by defendants Hong and Rossi, reaffirmed OmniVision's previously announced financial results. Additionally and with respect to the presentation of its financial results, defendants caused OmniVision to represent:

> The accompanying unaudited condensed consolidated financial statements as of October 31, 2003 and April 30, 2003 and for the three and six months ended October 31, 2003 and 2002 have been prepared by OmniVision Technologies, Inc. and subsidiaries (the "Company" or "OmniVision") in accordance with the rules and regulations of the Securities and Exchange Commission. The amounts as of April 30, 2003 have been derived from the Company's annual audited financial statements.

> ***

> In the opinion of management, the accompanying unaudited financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the financial position of the Company and its results of operations and cash flows as of and for the periods presented.

45. On February 18, 2004, defendants caused OmniVision to report that in the three months ended January 31, 2004, the third quarter of its fiscal year 2004, it earned net income of $17.3 million on revenue of $94.5 million. Earnings per diluted share were $0.28, adjusted for the effect of the two-for-one stock split that occurred on February 17, 2004. Earnings per diluted share, before the effect of the stock split, were equivalent to $0.57. In the comparable period a year ago, the Company earned net income of $4.6 million on revenue of $30.5 million, and earnings per

diluted share were $0.09, adjusted for the effect of the stock split. For the quarter ending April 30, 2004, the Company expected to report earnings per diluted share of $0.30 to $0.31, adjusted for the effect of the stock split, on revenue of $96 million to $100 million. Commenting on the results, defendant Hong stated:

> "In the January quarter, sales of CameraChips for mobile phones grew by more than 100% quarter to quarter, and the mobile phone sector emerged as our largest market[.]"..."We believe that the era of the camera phone is just beginning, and we continue to view this market as a large and exciting opportunity."

46. On March 16, 2004, defendants caused OmniVision to file its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q report, signed by defendants Hong and Rossi, reaffirmed OmniVision's previously announced financial results. Additionally and with respect to the presentation of its financial results, defendants caused OmniVision to represent:

> The accompanying interim unaudited condensed consolidated financial statements as of January 31, 2004 and April 30, 2003 and for the three and nine months ended January 31, 2004 and 2003 have been prepared by OmniVision Technologies, Inc. and its subsidiaries (the "Company" or "OmniVision") in accordance with the rules and regulations of the Securities and Exchange Commission.
>
> ***
>
> In the opinion of management, the accompanying unaudited financial statements reflect all adjustments, consisting only of normal recurring adjustments, necessary to present fairly the financial position of the Company and its results of operations and cash flows as of and for the periods presented.

47. The statements contained in ¶¶ 33-46 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that defendants knew or recklessly disregarded the fact that the Company was losing customers to larger rivals such as Micron Technologies, Inc., Texas Instruments Inc., and National Semiconductor Corporation; (2) that Company knew or recklessly disregarded that its surging growth was hitting a plateau, due to the decline in the customer base; (3) that the defendants, in order to mask the decline in growth, manipulated the Company's financial results through improper revenue recognition, which was in

violation of GAAP; and (4) that  as a result, the Company's financial results were materially inflated and inaccurate at all relevant times.

### The Truth Begins To Emerge

48.     On June 9, 2004, defendants were forced to have OmniVision announce, before the market opened, that the Company had rescheduled the release of its fiscal 2004 fourth-quarter and year end results to June 23, 2004, after the close of the market, from the previously announced date of June 9, 2004.  In addition to delaying its financial results, the Company announced the following:

> Following an internal review by the Company and an independent investigation, the Company is considering the restatement of financial results for certain quarters of fiscal 2004 and, possibly, fiscal 2003. The investigation includes a review of cut-off issues and has not yet reached definitive conclusions; however, the Company currently believes that restatement could have the effect of increasing revenue and net income for the nine months ended January 31, 2004. The Company believes that revenue could increase by a total of approximately $5 million over the amounts previously reported for this period and that net income could also increase. On June 23, 2004, the Company plans to release results for the fourth quarter and fiscal year ended April 30, 2004, as well as any restatement of results for interim periods of fiscal 2004.

> The Company also announced that it expects results for the fourth quarter of fiscal 2004 to meet or exceed the guidance of $96 million to $100 million in revenue and $0.30 to $0.31 in diluted earnings per share that the Company provided on February 18, 2004. As of April 30, 2004, the Company's financial position remained strong, with no debt and with cash, cash equivalents and short-term investments in excess of $215 million.

> Additionally, OmniVision provided guidance for the first quarter of fiscal 2005. For the quarter ending July 31, 2004, the Company currently expects to report $95 million to $100 million in revenue and $0.29 to $0.31 in diluted earnings per share.

49.     News of this shocked the market.  Shares of OmniVision fell $7.84 per share or 30.78 percent on June 9, 2004, to close at $17.63 per share, on unusually high volume of 40.1 million shares.

50.     Defendants materially misled the investing public, thereby inflating the price of

1  OmniVision's common stock, by publicly issuing false and misleading statements and omitting to

2  disclose material facts necessary to make Defendants' statements, as set forth herein, not false and

3  misleading. Said statements and omissions were materially false and misleading in that they failed

4  to disclose material adverse information and misrepresented the truth about the Company, its

5  business and operations, as alleged herein.

## OMNIVISION'S VIOLATION OF GAAP RULES

51.    GAAP states that "revenue should not be recognized until it is realized or

realizable and earned." FASB Concepts Statement No. 5, ¶83. The conditions for the recognition

of revenue are met when "persuasive evidence of an arrangement exists, delivery has occurred or

services have been rendered, the seller's price is fixed or determinable, collectibility of the sales

price is reasonably assured and when the entity has substantially performed the obligations which

entitle it to the benefits represented by the revenue." Here, defendants caused OmniVision to

improperly recognize revenue when revenue from such transactions was not realizable and earned,

which is in violation of GAAP.

52.    Given these accounting irregularities, defendants caused the Company to

announce financial results that were in violation of GAAP, the Company's own announced revenue

recognition policies, and the following principles:

(a)    The principle that "interim financial reporting should be based upon the same

accounting principles and practices used to prepare annual financial statements" was

violated (APB No. 28, ¶10);

(b)    The principle that "financial reporting should provide information that is useful to

present to potential investors and creditors and other users in making rational

investment, credit, and similar decisions" was violated (FASB Statement of

Concepts No. 1, ¶34);

(c)    The principle that "financial reporting should provide information about the

economic resources of an enterprise, the claims to those resources, and effects of

transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)  The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)  The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79);

(f)  The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶58-59); and

(g)  The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated. (FASB Statement of Concepts No. 2, ¶95).

53.  The adverse information concealed by defendants during the period set forth and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. 229.303).

54.  During this time period, and with the Company's stock trading at inflated levels, defendants were able to complete a public offering of 3,221,226 shares of its common stock, at a price of $38.75 for an aggregate public offering price of $125 million.

55.  Moreover, during this same time frame, defendants Hong, Wu and Rossi, all company insiders, were able to sell   million shares of their privately held Company stock for proceeds totaling over $25 million as evidenced by the chart below:

| NAME | SHARES SOLD | PROCEEDS |
|------|-------------|----------|
| **Hong** | 199,934 | $6.7 million |

| | | |
|---|---|---|
| **Wu** | 405,927 | $16.9 million |
| **Rossi** | 65,000 | $2.0 million |
| **TOTAL** | 670,861 | $25.6 million |

**Members of the Audit Committee Abdicate Their Oversight Responsibilities**.

56.    Throughout FY 2003, the members of the Audit Committee, defendants Rossi, Winn and Jeng received or should have received numerous reports regarding the business affairs of the Company and the manner by which defendants were improperly recognizing revenue relating to software licenses. Indeed, in FY:03, the Audit Committee held six (6) meetings, yet it never took any action as the defendants caused the Company to issue false and misleading financial reports that failed to acknowledge the improper accounting procedures in place. If the defendants on the Audit Committee had been properly discharging their duties, they would have found the "red flags" which indicated that defendants were causing OmniVision to make false and misleading statements to the investing public including: (1) that defendants knew or recklessly disregarded the fact that the Company was losing customers to larger rivals such as Micron Technologies, Inc., Texas Instruments Inc., and National Semiconductor Corporation; (2) that Company knew or recklessly disregarded that its surging growth was hitting a plateau, due to the decline in the customer base; (3) that the defendants, in order to mask the decline in growth, manipulated the Company's financial results through improper revenue recognition, which was in violation of GAAP; and (4) that as a result, the Company's financial results were materially inflated and inaccurate at all relevant times such that the false and misleading information disseminated by Defendants caused the Company stock to trade at artificially inflated prices.

57.    In breach of both their fiduciary duty of good faith and their responsibilities pursuant to the Audit Committee Charter, the members of the Audit Committee wilfully ignored the obvious and pervasive problems with OmniVision's accounting and revenue recognition practices. The members of the Audit Committee made no effort to establish and maintain adequate internal

controls for the Company to ensure that the Company's financial results were calculated and recorded in accordance with GAAP.

58. The foregoing misconduct of defendants Rossi, Winn and Jeng caused OmniVision to suffer damages, including, but not limited to, downgrading of the Company's credit ratings, loss of credibility in the market and the necessity to defend various class action lawsuits pending in federal court in California.

## Illicit and Illegal Insider Trading

59. Defendants own significant amounts of OmniVision stock and/or hold millions of vested options to purchase OmniVision stock. This huge equity stake gave defendants a very strong motive to do everything they could to keep OmniVision's stock price up, including the false and misleading statements set forth above. These top insiders, defendants Hong, Wu and Rossi, engaged in this activity because they knew they faced little or no individual risk as, if they were caught and sued, they would be protected by huge amounts of directors' and officers' liability insurance (purchased not with their funds, but rather with OmniVision's stockholders' monies and with OmniVision's own assets), which they could use to defend themselves and settle any securities suits.

60. While purchasers of OmniVision's securities during the Relevant Period have suffered significant losses, OmniVision's insiders did not fare nearly so badly. Three board members, the co-founders of the Company, defendants Hong and Wu, along with the CFO of the Company, defendant Rossi, unloaded over 670,000 shares of the Company's stock pocketing over $25 million in illegal insider trading proceeds, as shown below:

| NAME | SHARES SOLD | PROCEEDS |
|---|---|---|
| **Hong** | 199,934 | $6.7 million |
| **Wu** | 405,927 | $16.9 million |
| **Rossi** | 65,000 | $2.0 million |
| **TOTAL** | 670,861 | $25.6 million |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

61.    Defendants inflated the price of OmniVision shares by issuing false and materially misleading statements that allowed the defendants to (i) deceive the investing public regarding OmniVision's business, operations, management and the intrinsic value of OmniVision common stock; (ii) enabled Defendants to successfully float the secondary offering; and (iii) allowed certain insiders, along with entities controlled by certain insiders, to sell over 670,000 million shares of company stock and garner illegal proceeds of more than $25 million.

62.    The sale of over $25 million of Company stock by insiders of OmniVision was unusual in nature and timing, which is strong evidence that defendants acted to capitalize on their material misrepresentations and failure to disclose adverse non-public information.

63.    The insiders' stock sales were also *per se* evidence of defendants' scienter because they all occurred during the time when the Company was failing to perform as indicated in earlier statements defendants caused the Company to make and defendants had artificially inflated OmniVision's financials, and before the time when defendants issued the June 9, 2004 statements which caused the stock price to plummet.

64.    Since the time that defendants made their revelations concerning the true financial condition and growth prospects of the Company, a disclosure which decimated the price of its stock, several shareholder class action lawsuits have been filed against the Company alleging that OmniVision's public disclosures were materially false and misleading and in violation of federal securities laws.  These class action lawsuits are in the federal court in the Northrn District of California and will continue to expose the Company to enormous liability and costs.

## Defendants' Violations of GAAP Rules

65.    The financial results that defendants caused the Company to announce were in violation of GAAP, and the following principles:

    1.    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶ 10);

1

2. The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of

2

3

Concepts No. 1, ¶34);

4

5

3. The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts

6

7

No. 1, ¶40);

8

9

4. The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

10

11

5. The principle that " completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79);

12

13

14

6. The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶58-59);

15

16

17

7. The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95); and

18

19

20

8. The principle that "[f]inancial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.... To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general." (FASB Statement of Concepts No. 1, ¶50).

21

22

23

24

66. The adverse information concealed by defendants and detailed above

25

was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R.

26

229.303).

27

67. Moreover, the adverse information concealed by defendants and detailed

28

1  above was in violation of SEC Regulation S-X, which states that "financial statements filed with

2  the SEC which are not  prepared in compliance with GAAP are presumed to be misleading and

3  inaccurate."  SEC Regulation S-X also required that "interim financial statements [i.e., Form 10-

4  Qs] must also comply with GAAP."  17

5  C.F. R. §210.10-01(a).

### Derivative and Futility of Demand Allegations

68.     Plaintiff brings this action derivatively in the right of and for the benefit of

OmniVision to redress injuries suffered and to be suffered by OmniVision as a direct result of the

violations of law, breaches of fiduciary duty, corporate mismanagement, abuse of control, as well

as the aiding and abetting thereof, by the Director Defendants.  OmniVision is named as a nominal

defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this

Court which it would not otherwise have.

69.     Plaintiff will adequately and fairly represent the interests of OmniVision

and its shareholders in enforcing and prosecuting their rights.

70.     It would be futile to require plaintiff to issue a demand to the Director Defendants

requesting them to take action against themselves and certain senior OmniVision executives for

their intentional or reckless conduct as alleged herein.  Not only would this require them to

investigate and bring claims against themselves for their own misconduct, but their actions, to date,

prove conclusively that they will not take action.

71.     Plaintiff did not make a demand on the Board of Directors of OmniVision to bring

this action because such demand would be futile given the facts as alleged herein and, therefore,

such a demand is excused.

72.     The directors of OmniVision cannot be relied upon to reach a truly independent

decision as to whether to commence the demanded actions against themselves and the officers,

employees or consultants responsible for the misconduct alleged in this complaint, in that, *inter*

*alia*, the Board of Directors is dominated by defendants who were personally and directly involved

in the misconduct alleged and/or who each approved the actions complained of, and to whose directives and views the Board has consistently acceded and will continue to accede. This domination of the Board of Directors by certain defendants has impaired the Board's ability to validly exercise its business judgment and rendered it incapable of reaching an independent decision as to whether to accept plaintiff's demands.

73.    In order to bring this action for breaching their fiduciary duties and engaging in other misconduct, the members of the OmniVision Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Corporation, who are their good friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do. Therefore, the Director Defendants would not be able to vigorously prosecute any such action.

74.    The members of the OmniVision Board of Directors receive benefits, stock options and other emoluments by virtue of their membership on the Board and their control of OmniVision. They have thus benefitted from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action. The Board members also have close personal and business ties with each other and are, consequently, interested parties and cannot in good faith exercise independent business judgment to determine whether to bring this action against themselves and one another.

75.    The composition of OmniVision's Board of Directors is designed to (and does) make them dependent on and deferential to defendants and Company co-founders Hong and Wu who, as a practical matter, control and dominate the process by which directors are selected for nomination or renomination to the Board. Non-employee directors are given stock options to purchase thousands of shares of OmniVision stock, the amount of which the officers named as defendants herein are in a position to influence or control. Thus, no non-officer Board member can be independent as he or she has a direct economic incentive to please the top officers and directors to stay on the Board.

76.     Despite their knowledge of these facts, the Defendants intentionally allowed the Company to disseminate false and misleading financial information to the investing public without reasonably assuring themselves that the Company would comply with required accounting procedures and otherwise comply with its legal requirements.

77.     The Defendants undertook this course of conduct with intentional and/or reckless breach of their fiduciary duties because they were afraid that taking the drastic action that was necessary to correct and address the severe lack of any internal controls would: (a) harm the market price of OmniVision's stock; (b) result in the loss of goodwill in the investing community; and (c) jeopardize their personal reputations and financial interests.

78.     Plaintiff has not made any demand on the OmniVision Board of Directors or its shareholders to institute an action against the Defendants for their breach of fiduciary duties and other misconduct since such demand would be a futile and useless act for, *inter alia*, the following reasons:

a.      A majority of the OmniVision Board of Directors participated in, approved or recklessly disregarded the wrongs complained of herein, which could not have been an exercise of good faith business judgment.

b.      OmniVision's Board has engaged in a systematic course of conduct pursuant to which they have continually favored the interests of OmniVision insiders, particularly defendants Hong, Wu and Rossi at the direct expense of the Company and its stockholders, which could not have been an exercise of good faith business judgment.

c.      Defendants Hong and Wu are the co-founders of the Company and dominate the relatively small Board of Directors. In addition, in 2003, defendants Hong and Wu brought in board member and defendant Rossi to serve as CFO and Vice President of Finance for the Company. This move merely formalized the consolidation of power that defendants Hong and Wu have over the Company. As stated by defendant Hong when defendant Rossi took over as CFO, "We are very pleased to have John join our management team, because he is already a valuable contributor to OmniVision. He has worked closely with us for almost four years - first as our banker and advisor and then as a member of our board."

d.      The principal professional occupations of defendants Hong, Wu and Rossi are their employment with OmniVision. All three received and continue to receive substantial monetary benefits due to their employment with OmniVision, including, but not limited to, hundreds of thousands of dollars in salary and cash bonuses, options to purchase shares of OmniVision common stock, and other compensation and benefits. Accordingly, defendants Hong, Wu and Rossi are each incapable of considering a demand to initiate and prosecute this action.

    e. Despite their knowledge of the wrongdoing alleged herein, the directors of OmniVision have not taken action to seek recompense from the wrongdoers who have caused harm to the Company, including, but not limited to, defendants Hong, Wu and Rossi.

    f. The acts which are complained of herein constitute violations of fiduciary duties owed to the Company and its shareholders and violations of law and these acts are incapable of ratification.

    g. The members of the Audit Committee, defendants Winn, Rossi and Jeng who comprise a majority of the purported "independent" members of the Board, exhibited a sustained and systematic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment. There is a substantial likelihood that defendants Winn, Rossi and Jeng will be held personally liable for their misconduct.

    h. Each of the Director Defendants knew of and/or directly benefitted from the wrongdoing complained of herein. Specifically, as a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees, and directors; Defendants knew the adverse non-public information regarding the averments set forth above. While in possession of this material adverse non-public information regarding the Company, defendant Hong sold 199,934 shares of his OmniVision stock, realizing illicit gross proceeds of $6.7 million, defendant Wu sold 405,927 shares of OmniVision stock, realizing illicit gross proceeds of $16.9 million dollars and defendant Rossi sold 65,000 shares of his OmniVision stock, realizing illicit gross proceeds of $2.0 million. Accordingly, these selling defendants are directly interested in the subject transactions and therefore are incapable of considering a demand to initiate and prosecute this action.

    i. In order to bring this suit, the Director Defendants would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do. These inter-related business and personal relationships have developed debilitating conflicts of interest which prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.

    j. A majority of OmniVision's Board own substantial amounts of the Company stock and have personally profited from these wrongful acts.

    k. To bring an action against themselves would subject the Defendants to personal liability in the securities class action lawsuits pending, as well as additional liability in future lawsuits that could result from such an action.

    l. OmniVision's officers and directors are protected against personal liability by a directors' and officers' liability insurance policy. They caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders of OmniVision. However, the directors' and officers' liability insurance policies covering defendants contain provisions which eliminate coverage for any action brought directly by OmniVision against these defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if these directors were to sue themselves, no insurance protection would be provided for the derivative claims. Thus, this is a further reason why the OmniVision Board will not bring such a suit, for to do so would subject themselves and their colleagues and/or friends to a judgment of millions of

1  dollars that would have to be paid from their individual assets alone. On the other hand, if the
2  claims are brought derivatively, such insurance coverage will provide a basis for the Company to
   effectuate a recovery.

3
## Reasonable Doubt Exists That the OmniVision Board Is
4  ## Entitled to the Business Judgment Protection

5      79.    For the reasons set forth herein, a reasonable doubt exists that the Board's approval
6  and/or acquiescence to the Company's improper accounting methods and absence of appropriate
7  business controls was the product of a valid exercise of business judgment.

8
       80.    As directors of the Company, the Director Defendants received, or should have
9  received, regular and detailed financial reports and were, or should have been, kept abreast and made
10 familiar with the current financial conditions of the Company.
11

12     81.    The directors of the Company served on committees for which they were
13 compensated by way of significant grants of stock options pursuant to which they were specifically
14 vested with duties to closely monitor the business and financial performance of the Company.

15     82.    As part of their fiduciary duties, the Director Defendants had an obligation to inform
16 themselves, prior to making a business decision, of all material information reasonably available to
17 them. Certainly, the preceding averments establish that the OmniVision Board had and has
18 sufficient information to take action regarding the false and misleading statements being made to
19 the market and the investment community.

20     83.    Had the Board discharged its duty of reasonable inquiry, it would have been alerted
21 to the facts set forth above.

22     84.    The OmniVision Board of Directors' failure to discharge its duty of inquiry was a
23 gross and reckless disregard of its fiduciary duties to OmniVision and its shareholders, and caused
24 the Company harm.
25

26     85.    Accordingly, the Defendants, together constituting a majority of the directors on the
27 Board, as of the filing of this complaint, face a substantial likelihood of liability if an action
   asserting the claims alleged herein is brought against them, thus disabling the Director Defendants
28

1  from being capable of making a disinterested, independent decision about whether to prosecute this

2  action. Therefore, demand on the Board would have been futile.

3      86.      Under all of the circumstances, the Defendants' actions were outrageous and were

4  taken intentionally or, at a minimum, with reckless disregard for the legal rights of OmniVision and

5  the legal obligations and duties of the Defendants.

6
## FIRST CAUSE OF ACTION

7

### Breach of Fiduciary Duties For Failure to Establish
8
### and Maintain Adequate Accounting Controls

9

10      87.      Plaintiff incorporates by reference each of the foregoing allegations.

11      88.      As alleged in detail herein, each of the Defendants had a duty to OmniVision and its

12  shareholders to establish and maintain adequate internal accounting controls to ensure that the

13  Company's financial results were recorded in compliance with GAAP.

14      89.      The Director Defendants did not establish and maintain adequate internal accounting

15  controls at OmniVision and did not make a good faith effort to do so; thus, they abdicated their

16  fiduciary duty of good faith.

17      90.      As a direct and proximate result of the Director Defendants' foregoing breaches of

18  fiduciary duties, the Company has suffered enormous damages, as alleged herein.

19
## SECOND CAUSE OF ACTION

20

21
### Unjust Enrichment

22

23      91.      Plaintiff incorporates by reference each of the foregoing allegations.

24      92.      As a result of the foregoing conduct, including the huge profits earned in illegal

25  insider trading and the compensation received by the Defendants, defendants have been unjustly

26  enriched at the expense of OmniVision and/or have aided and abetted the unjust enrichment of the

27  other Director Defendants.

28

93.     OmniVision and its shareholders have been injured by reason of this unjust enrichment. Plaintiff, as a shareholder and representative of OmniVision, seeks damages and other relief for the Company as hereinafter set forth.

### THIRD CAUSE OF ACTION

### Against the Insider Selling Defendants for Violation of California Corporations Code §§25402 and 25502.5

94.     Plaintiff incorporates by reference each of the foregoing allegations.

95.     At the time that defendants sold their OmniVision common stock as set forth herein, by reason of their positions with OmniVision, the defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of OmniVision's business and financial condition.

96.     At the time of such sales, that information was not generally available to the public or the securities markets. Had such information been generally available, it would have significantly reduced the market price of OmniVision shares at that time.

97.     The defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their OmniVision common stock in violation of California Corporations Code §25402.

98.     OmniVision has total assets in excess of $1,000,000 and a class of equity securities held of record by 500 or more persons.

99.     Pursuant to California Corporations Code §25502.5, the Defendants, and each of them, are liable to OmniVision for damages in an amount up to three times the difference between the price at which OmniVision common stock was sold by the Defendants, and each of them, and the market value which that OmniVision common stock would have had at the time of the sale if the information known to the defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

100.    Further, pursuant to California Corporations Code §25502.5, the Defendants, and each of them, are liable to the derivative Plaintiff herein for reasonable costs and attorneys' fees in the prosecution of this derivative action on behalf of OmniVision.

101.    Plaintiff, as a shareholder and representative of OmniVision, seeks damages and other relief for the Company as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment on behalf of OmniVision as follows:

1.    Determining that this action is a proper derivative action maintainable under California law;

2.    Awarding damages and/or restitution in favor of plaintiff, on behalf of OmniVision, and against defendants and awarding punitive and exemplary damages as appropriate, plus pre-judgment interest;

3.    Granting equitable and/or injunctive relief as permitted by applicable law and equity, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of OmniVision has an effective remedy;

4.    Awarding plaintiff reasonable attorneys' fees and costs, as well as all other recoverable litigation expenses; and

5.    Granting such other and further relief as this Court may deem just and proper.

///
///
///

1

**JURY DEMAND**

2    Plaintiff demands a trial by jury.

3    DATED:  June 21, 2004                           Respectfully submitted,

4

5                                                    **GREEN & JIGARJIAN LLP**

6

7

8    By: _____
                                                         Robert S. Green

9

10                                                   235 Pine Street, 15th Floor
                                                     San Francisco, CA 94104
11                                                   Telephone:  (415) 477-6700
                                                     Facsimile:  (415) 477-6710
12

13                                                   Evan J. Smith

14                                                   Marc L. Ackerman
                                                     **BRODSKY & SMITH, LLC**
15                                                   Two Bala Plaza, Suite 602
                                                     Bala Cynwyd, PA 19004
16                                                   Telephone:     (610) 667-6200
17                                                   Facsimile       (610) 667-9029

18

19                                                   Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

complaint.wpd        VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT                34

## VERIFICATION

The undersigned verifies that said pleading is based on information which either I have furnished to counsel and/or upon which information has been gathered by counsel in the course of this lawsuit. The language of the pleading is that of counsel and not of signer. Signer verifies that he has read said pleading and that all averments therein are true and correct to the best of the signer's personal knowledge, information and belief. This verification is made subject to the penalties relating to unsworn falsifications to authorities and under penalty of perjury.

Laurent Torriani

Dated: 06 - 21 . 04

Document: OmniVision Verified Derivative Complaint.